JOHN I. WARMAN *et al.*

*v.*

THE FIRST NATIONAL BANK OF AKRON, OHIO.

*Opinion filed April 17, 1900.*

1. PRACTICE—*section 33 of Practice act construed.* The affidavit required by section 33 of the Practice act (Rev. Stat. 1874, p. 779,) in order to put the plaintiff upon proof of the execution of a written instrument must be made by the defendant charged with the execution of the instrument, and cannot be made by his agent.

2. SAME—*proviso to section 33 does not sanction affidavit by stranger to record.* The proviso to section 33 of the Practice act, permitting a denial of the execution of a written instrument on information or belief, where the party making the denial is not the one charged with the execution of the instrument, does not authorize an affidavit of denial by a stranger to the record.

3. BANKS—*when bank is not an innocent purchaser of note.* A bank does not become an innocent purchaser of a negotiable note, so as to entitle it to protection against infirmities of the paper, by merely discounting the same for a person not indebted to it and crediting him with the proceeds by way of deposit, as such deposit, so long as it is not withdrawn, is subject to equities of prior parties.

4. EVIDENCE—*what makes a prima facie case in a suit on note.* The introduction in evidence, by the plaintiff, of the notes sued upon, endorsed in blank by the payee, is *prima facie* evidence that the plaintiff has acquired them in good faith, for value, in the usual course of business, before maturity and without notice of defenses; and such proof cannot be overcome by showing merely that the

original transaction between the plaintiff and the payee did not, of itself, amount to a purchase of the notes.

5. SAME—*what must be shown to cut off rights of bank as an innocent purchaser.* Defendants to a suit on a note, brought by an endorsee bank, in order to sustain their claim that the bank is not entitled to protection as an innocent purchaser, must show, not only that the bank merely credited the proceeds of the discounted note by way of deposit in favor of the payee and that the payee was not then indebted to the bank, but must also prove that the amount due upon such deposit, if any, had not been drawn out at the time of the trial, there being no claim of an earlier notice to the bank of such defense. (MAGRUDER, J., dissenting.)

*Warman* v. *First Nat. Bank,* 70 Ill. App. 181, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

BEACH & BEACH, for appellants.

PADEN & GRIDLEY, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a suit brought against appellants by appellee, endorsee of two promissory notes claimed to have been executed by appellants, payable to the Diamond Rubber Company, and by it endorsed and discounted with appellee. A plea of the general issue was filed in the court below, and with it the following affidavit:

"STATE OF ILLINOIS, } ss.
  *County of Cook.* }

"S. I. Yoder, being first duly sworn, on oath says that he is agent of the above named defendants in this behalf; that said defendants have a just and meritorious defense to the whole of plaintiff's demand; that he has read the foregoing plea and knows the contents thereof, and verily believes the same to be true.                                    S. I. YODER.
"Subscribed and sworn to," etc.

A second plea denied the assignment, by endorsement, of the notes to the plaintiff before their maturity. The fourth alleged want of consideration for the execution of

said notes, and knowledge thereof on the part of plaintiff
at the time of their assignment to it.   The fifth alleged
total failure of consideration for the notes by reason of
the breach of warranty of the goods sold to defendants
by the payee, and knowledge of such total failure of con-
sideration on the part of the plaintiff at the time of the
alleged assignment of the said notes to it.   The sixth al-
leged total failure of consideration for the reasons stated
in the fifth plea, and that the notes sued upon were as-
signed to and taken possession of by the plaintiff after
maturity of the same.   The seventh alleged want of con-
sideration for the notes, and that the same were assigned
to the plaintiff after their maturity.   By replications,
issue was taken upon each of these special pleas.

On the trial the notes were introduced in evidence,
over the objection of defendants, without proof of their
execution, and the defendants, after showing that the
notes in question were discounted by the payee of the
same with the plaintiff, and that at the time of such dis-
count the proceeds thereof were credited to the payees,
attempted to introduce evidence in support of their pleas,
but on objection it was excluded by the court and excep-
tions taken.   An instruction to the jury to find the issues
for the defendants was refused, and one to find for the
plaintiff and assess the damages at the sum of $1915.58
was given.   A verdict for that amount was accordingly
rendered.   After overruling defendants' motion for a new
trial the court rendered judgment on the verdict.   That
judgment has been affirmed by the Appellate Court.

The amount for which the jury was directed to return
a verdict was the amount due on the notes, and it is not
claimed that the court erred in giving that peremptory
instruction if its rulings upon the admissibility of testi-
mony was correct.   It is, however, insisted that error was
committed in that regard, first, in overruling defendants'
objection to the introduction of the notes in evidence
without proof of their execution.   This assignment of

error is based upon the assumption that the affidavit attached to the plea of the general issue was sufficient to bring it within the provisions of paragraph 34 of the Practice act. (Rev. Stat. p. 779.) It will be seen by reference to that statute that the affidavit necessary to put a party upon proof of the execution of an instrument sued on, must, if to a plea, be the affidavit of the defendant. Here, neither of the defendants to the action swears to the plea. They are the parties charged with the execution of the notes upon which the action is brought, and they alone could, within the meaning of the statute, make affidavit that they did not so execute them. They could not do so by an agent. *Stevenson* v. *Farnsworth,* 2 Gilm. 715; *Warren* v. *Chambers,* 12 Ill. 124; *Davis* v. *Scarritt,* 17 id. 202.

But counsel insist the affidavit is sufficient under the proviso to the foregoing section. This position is also untenable. Under the proviso the one making the affidavit must still be a party to the suit. "The party making such denial" is fixed by that part of the section preceding the proviso. There is nothing, either in the body of the statute or proviso, authorizing a third party,—*i. e.,* one not a party plaintiff or defendant,—to deny the execution of an instrument upon which an action is brought.

The second and only other ground of reversal urged is the refusal of the trial court to admit evidence offered by the defendants in support of their special pleas. This assignment of error is based solely upon the proposition that under the evidence produced upon the trial the plaintiff was not such an innocent holder of the notes as to be entitled to protection against defenses existing against the payee. The president of the bank, being called by the defense, testified that the $1500 note was discounted July 3 and the $400 note August 19, and was then asked the question, "Will you tell just what was done when you say they were discounted?" and he answered: "I have the duplicate deposit tickets here, showing the credit to the parties for whom we discounted them, of the proceeds,

upon those days." Upon this evidence counsel lay down the legal proposition "the plaintiff cannot claim the protection of an innocent purchaser of said notes for value before maturity," and they say: "The bank parted with nothing of value to the payee in said notes, but merely extended additional credit to the said payee. Until it appears that said credit was used and the bank account drawn upon or exhausted by the said payee, the bank has parted with nothing of value." The Appellate Court declined to pass upon the point, on the ground that it was not raised by the pleas filed. The question is, however, treated by both parties as before us, and while we think there is force in the position taken by the Appellate Court, we shall pass upon it as properly raised.

We think the authorities fully sustain the proposition that a bank does not become a purchaser of negotiable paper by discounting the same for one not indebted to it at the time, and merely placing the amount which the assignor is to receive to his credit by way of deposit. It is well understood that by a general deposit in bank the relation of debtor and creditor, merely, is created between the bank and depositor; and if in this case the bank only became such a debtor to the rubber company, and if that indebtedness continued to exist at the time of the trial, it could have protected itself, if the defenses set up prevailed against the notes, by refusing to pay the deposit, and therefore could not claim the protection of being an innocent holder for value, or if it had paid any part of the deposit it would be entitled to protection *pro tanto. Drovers' Nat. Bank* v. *Blue,* 110 Mich. 31; *Central Nat. Bank* v. *Valentine,* 18 Hun, 417; *Fox* v. *Kansas City Bank,* 30 Kan. 441; *Mann* v. *Second Nat. Bank,* id. 412; *Manufacturers' Nat. Bank of Racine* v. *Newell,* 71 Wis. 309; *Dougherty* v. *Central Nat. Bank,* 93 Pa. St. 227; *Lancaster County Nat. Bank* v. *Hewer,* 114 id. 216.

The more difficult question here is, did the defendants prove the plaintiff to be within the rule announced, by

merely showing that no money was paid for the notes at the time of the discount, or were they not bound to go farther and prove the state of the account between the rubber company and the bank. The theory of appellants is, that the proof offered by them showed *prima facie* that the plaintiff did not become a purchaser of the notes by the discount, and that the plaintiff could only claim the benefit of an existing indebtedness by the rubber company, or the subsequent payment of the deposit, by proving it. The position is untenable. The rule deducible from the authorities on which the defense is based is accurately stated in 4 Am. & Eng. Ency of Law, (2d ed.) p. 298, as follows: "Where a bank discounts paper for a depositor who is not in its debt, and gives him credit upon its books for the proceeds of such paper, it is not a *bona fide* holder for value, so as to be protected against infirmities in the paper, unless, in addition to the mere fact of crediting the depositor with the proceeds of the paper, some other and valuable consideration passes. Such a transaction simply creates the relation of debtor and creditor between the bank and the depositor, and so long as that relation continues and the deposit is not drawn out the bank is held subject to the equities of prior parties, even though the paper has been taken before maturity and without notice."

The plaintiff was in possession of the notes endorsed by the payee and introduced them in evidence on the trial. That was sufficient *prima facie* proof that it acquired them *bona fide* for value, in the usual course of business, before maturity, and without notice of any fact or circumstance impeaching their validity, and that it was the owner of them and entitled to recover the full amount due thereon against the makers. On the introduction of the notes the plaintiff therefore properly rested its case. (*Palmer* v. *Nassau Bank*, 78 Ill. 380; Daniel on Neg. Inst. sec. 812.) Possession of the notes endorsed in blank by the payee was *prima facie* evidence that the bank was the proper

owner of them, and nothing short of fraud,—not even gross negligence, if unattended with *mala fides,*—would have been sufficient to overcome the effect of that evidence or to invalidate the title thus shown. (*Collins* v. *Gilbert,* 94 U. S. 753.) Both upon principle and authority the defendants could not overcome the *prima facie* case thus made by merely showing that the original transaction between the plaintiff and the payee did not, of itself, amount to a purchase of the notes.

It will be seen that one of the requisites of the rule as quoted above is that the depositor is not in the bank's debt at the time of the discount, and proof of that fact would therefore be necessary to bring a defense within its provisions. The defense here insisted upon has received careful consideration by the Supreme Court of the State of Kansas in the several cases above cited; and in *Mann* v. *Second Nat. Bank, supra,* it was held that mere evidence that, at the time when such an instrument was discounted by a bank, the bank merely gave credit for the amount of the instrument to the person selling the same, who had an account with the bank, without showing the state of the account at that or at any other time, will not, of itself and alone, prove that the bank was not a purchaser for value, the court saying: "If we should assume that the bank did not pay the value of the note at the time it was discounted, but simply gave a credit to the Champion Machine Company therefor, still there would be nothing to show whether at that time the bank owed the Champion Machine Company or the machine company owed the bank. The machine company, for anything that appears in the case, may have owed the bank more than $143 at the time the note was discounted, and if it did, the bank would have obtained the note unaffected by the equities existing between the antecedent parties of which it had no notice. (*Draper* v. *Cowles,* 27 Kan. 484.) And the Champion Machine Company may have continued to owe the bank ever since."

We think the defendants could not claim that the bank did not become a purchaser of the notes sued upon, without proving, not only that it took the notes upon a discount, crediting the payee with the amount as a deposit, but what the state of the account between the bank and the payee was at the time of the discount, and that the amount due on that deposit, if any, had not been drawn out prior to the trial, there being no claim that notice of the defenses set up in the special pleas came to the plaintiff prior to the trial.

We do not think it can be said that the state of the account between the bank and the payee of the notes was a fact so peculiarly within the knowledge of the plaintiff that the burthen of proof should be cast upon it. The defendants, having the president of the bank on the witness stand, could have as readily proved by him the state of the account as they could just what was done at the time the bank got the notes, by asking him to state the fact, or if it was necessary to prove the fact by the bank books, they had ample power by the process of the court to compel the production of them in court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

I concur in the views expressed in this opinion, except the holding that appellants were obliged to prove that the amount of the credit had not been drawn out before the trial. I cannot subscribe to the correctness of this ruling, and therefore do not agree to the conclusion reached. It is claimed by the appellee, that it was the duty of the appellants in this case not merely to prove that credit was given to the Diamond Rubber Company by the appellee when the notes were discounted, but to go further and prove that the amount of the discount, as credited, was not drawn out by the rubber company before the beginning of this suit, because, when it was

drawn out before notice to the bank of the defense, the bank had paid a valuable consideration. Under the circumstances of this case such proof, if it could be made, should have come from the appellee. The officers of the appellee' bank could more easily prove, whether or not the amount had been drawn out by the rubber company, than the appellants. The books of the bank were within the control of the bank itself, and not within the control of the appellants. It was difficult for the appellants to prove a negative.

It is true that, when the appellee introduced its notes upon the trial below, its mere possession of them imported *prima facie* that the bank had acquired the notes in good faith for full value in the usual course of business before maturity, and without notice of any circumstances impeaching their validity; and that the bank was the owner of the notes and entitled to recover the full amount due thereon. The production of the notes *prima facie* established the bank's case, and it was entitled to rest after such production. (Daniel on Neg. Inst. sec. 812; *Palmer* v. *Nassau Bank,* 78 Ill. 380). When notes are thus produced, nothing short of fraud, not even gross negligence, if unattended with bad faith, is sufficient to avert the effect of the evidence, or to invalidate the title of the holder. (*Collins* v. *Gilbert,* 94 U. S. 753; *Hodson* v. *Eugene Glass Co.* 156 Ill. 397). Where the maker of the note shows that it was obtained from him by fraud, the burden of proof is shifted from him to the holder, and the latter must show that he acquired it in good faith for value in the usual course of business, and in such a way as not to create a presumption of knowledge of its invalidity. (*Hodson* v. *Eugene Glass Co. supra*).

But, in the case at bar, although the defendants did not offer to prove fraud in the execution of the notes, yet they did prove, under the issue whether or not the appellee was purchaser of the notes in good faith before maturity for value, that the appellee actually paid no

money for the notes, but merely gave the rubber company a credit upon its books for the amount, for which the notes were discounted.   When the defendants introduced this proof, it was natural to assume that the credit, given to the rubber company on account of the notes, had not been paid by the bank when this action was commenced.   (*Manufacturers' Nat. Bank of Racine* v. *Newell*, 71 Wis. 315).   After the proof, thus made by the appellants, the bank could not be regarded as a *bona fide* purchaser for value of the notes by reason of the mere discount and credit.   The defense, which it was sought to prove, was substantial, and went to the merits, and was sufficient to bar any recovery under the circumstances.   It was, therefore, error for the court below to refuse to receive evidence in support of the pleas, which set up a failure of consideration.   It was within the discretion of the court to require from the appellee evidence, if such evidence existed, that the amount of the credit had been drawn out prior to the maturity of the notes, or prior to the beginning of the present suit, before the introduction of evidence by the appellants impeaching the consideration of the notes.   If appellee had produced such proof, the action of the court, here complained of, would have been correct.   Or, the court might have permitted the appellants to introduce their proof as to the failure of the consideration, and then allowed the appellee upon rebuttal to show, if it could, that the amount of the credit had been drawn out of the bank.   But the court should have pursued the one course or the other.   (*Drovers' Nat. Bank* v. *Blue*, 110 Mich. 31).

For the error thus indicated, I think that the judgments of the Appellate Court and circuit court should be reversed, and that the cause should be remanded to the circuit court for further proceedings.